IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**EVANJELINA RODRIGUEZ and**                                    **PLAINTIFFS**
**JASON DAVIDSON, Individually and**
**on Behalf of Others Similarly Situated**


vs.                                       No. 5:19-cv-5035-TLB


**GEORGE'S, INC.**                                              **DEFENDANT**


## DECLARATION OF ATTORNEY JOSH SANFORD

Pursuant to 28 U.S.C. § 1746, Josh Sanford declares, subject to the penalties for perjury, as follows:

1.      My name is Josh Sanford, and I am over the age of 18 and duly qualified to execute this Declaration and to swear to the accuracy of the facts herein contained.

2.      I am an attorney licensed and in good standing in the State of Arkansas.  I practice law with the law firm of Sanford Law Firm, PLLC (hereinafter "Sanford Law Firm"), which is located in Little Rock, which I founded in Russellville in 2001. I opened an office in Little Rock in 2009 and now predominantly practice in the Arkansas District Courts, together with a busy Western District of Texas practice.

3.      I practice law full-time, and I manage the other fifteen (15) attorneys in the Sanford Law Firm.

4.      Including cases now pending, I have prosecuted over 200 wage lawsuits in Texas in the last five years.  Some of these were arbitrations.

5.      Including cases now pending, I have prosecuted over 500 wage lawsuits in

Arkansas in the last ten years.

6.      In the course of my law practice, I engage in a significant amount of wage and hour litigation—specifically cases arising under the Fair Labor Standards Act (FLSA) and the comparable Arkansas Minimum Wage Act (AMWA).  A significant portion of my case load is in various federal courts around the United States, also including trial work in cases arising under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the FLSA, and the Family and Medical Leave Act.

7.      I am licensed to practice law in all state and federal courts in the States of Arkansas, Colorado and Texas. I am also actively engaged in appellate practice.  I have handled cases before almost all county Circuit Courts in the Central and River Valley regions of Arkansas, the United States District Courts for the Eastern and Western Districts of Arkansas, the United States District Courts for the Eastern, Southern, Northern and Western Districts of Texas, United States District Court for the Northern District of Oklahoma, United States District Court for the Southern District of Ohio, the United States District Court for the District of Colorado, the United States District Court for the Eastern District of Michigan, the United States District Court for the District of Oregon, the Fifth, Sixth and Eighth Circuit Courts of Appeals.

8.      In the past few years we have also filed cases in Ohio, Kentucky, Tennessee, North Carolina, South Carolina, Florida, Georgia, Alabama, Mississippi, Louisiana, Missouri and Illinois.  There is no group of attorneys within 600 miles of Little Rock who have experience comparable to Sanford Law Firm in wage litigation.  Including cases currently being prosecuted throughout the country today, Sanford Law Firm has prosecuted over 1,000 wage cases in federal and state courts and in arbitration

proceedings.  In 2018, only one firm in the United States initiated more wage violation prosecutions than Sanford Law Firm.

9.      In 2005, I was voted "Best Attorney" (tie) in a readers' poll published by *The Courier* in Russellville, Arkansas. Subsequently, in 2008, I served as the President of the Pope County Bar Association. In addition, I am or have been a member of the American, Arkansas, and Pope County Bar Associations, the Arkansas Trial Lawyers Association and the National Employment Lawyers Association.

10.      I have been lead counsel on numerous wage and hour cases filed in United States District Courts throughout the nation, including the following: *Craig Lyons, et al. v. Con Agra*, 4:12-cv-245-JM (E.D. Ark.) (over 790 plaintiffs); *Keyli Cruthis, et al. v. Visions, et al.*, 4:12-cv-244-KGB (E.D. Ark.); *James Finley v. Universal Pressure Pumping, Inc.*, SA:12-ca-0654-OG (Western District of Texas); *Michael Alexander v. Hahn Appliance Center, Inc.*, 12-CV-257-CVE-TWL (N.D. Okla.); *Chad Lochridge, et al. v. Lindsey Management, et al.*, 5:12-CV-5047-JLH (W.D. Ark.); *Bill Hollomon, et al. v. AT&T Mobility Services, LLC*, 4:11-cv-600-BRW (E.D. Ark.); *Jeffrey Bacon, et al. v. Eaton Aeroquip, LLC*, 2:11-cv-14103-GD (E.D. Mich.); *Karen "Kay" Roland v. Sharp County Post 336, et al.*, 1:11-CV-85-DPM (E.D. Ark.); *Bennie Watson, et al. v. Surf-Frac Wellhead Equipment Company, Inc.*, 4:11-CV-843 (JLH) (E.D. Ark.); *Robert Terry, et al. v. City of Ola*, 4:11-cv-11-645 (JLH) (E.D. Ark.); *Donald Bateman, et al. v. Frac Tech Services, LLC*, 6:11-cv-708 (E.D. Tex.); *Kalie Brown, et al. v. Barney's Barn, Inc., d/b/a/ Peaches Gentlemen's Club*, 4:11-cv-224 (SWW) (E.D. Ark.); *Jason Phillips v. Oil Patch Water and Sewer Services, LLC, et al.*, 4:11-cv-776 (JLH) (E.D. Ark.); *David Delock, et al. v. Securitas Security Services USA, et al.*, 4:11-CV-520 (DPM) (E.D. Ark.); *Karen Springs, et al. v.*

*First Student, Inc.*, 4:11-CV-00240 (BSM) (E.D. Ark.); *Teramura v. Walgreen Co.*, 5:12-cv-5244-JLH (W.D. Ark.), and many others.

11.     I have also been lead counsel on numerous wage and hour cases that resulted in settlements or judgments in favor of my clients including the following: *Coby Pearce v. Frac Tech Services, LLC*, No. 4:12-cv-651-JLH (E.D. Ark.); *Nicole Collins v. Barney's Barn, Inc., et al.*, No. 4:12-cv-685-SWW (E.D. Ark.); *Joseph Gauthier, et al. v. Trican Well Service, L.P.*, No. 6:13-cv-46-LED (E.D. Tex.); *Jason Roche, et al. v. S-3 Pump Service, Inc.*, No. 5:15-cv-268-XR (W.D. Tex.); *Kristen Whitworth, et al. v. French Quarter Partners, LLC*, No. 6:13-cv-6003-RTD (W.D. Ark.); *Robert Terry v. Yell County Ark.*, No. 4:13-cv-408-SWW (E.D. Ark.); *Jessica Guinn v. D J Trucking*, No. 4:13-cv-559-KGB (E.D. Ark.); *Maria Romero de Lopez, et al. v. Ozark Mountain Poultry, Inc.*, No. 5:13-cv-5272-TLB (W.D. Ark.); *Sean Jordan v. Big E. Foods, Inc.*, No. 4:14-cv-205-BRW (E.D. Ark.); *Patricia Hernandez, et al. v. Simmons Foods, Inc.*, No. 5:14-cv-5159-JLH (W.D. Ark.); *Sean Schneider v. Habitat for Humanity International, Inc.*, No. 5:14-cv-5230-TLB (W.D. Ark.); *Pedro Espinoza v. Car-Son Construction, LLC*, No. 4:14-cv-467-KGB (E.D. Ark.); *Sheila Lyles v. City of Trumann, Ark.*, No. 3:14-cv-210-DPM (E.D. Ark.); and *Kellie McCartney v. Baily and Thompson Tax and Accounting, P.A.*, No. 4:14-cv-561-SWW (E.D. Ark.).

12.     More recently, I have also been lead counsel on several wage and hour cases in which collective actions have been granted including *Sam Adams v. United Cerebral Palsy of Central Ark., Inc.*, No. 4:16-cv-930-JLH (E.D. Ark.); *James Harris, et al. v. Express Courier International, Inc.*, No. 5:16-cv-5033-TLB (W.D. Ark.); and *Dustin Moore, et al. v. Performance Pressure Pumping Services, LLC*, No. 5:15-cv-432-XR

(W.D. Tex.), and dozens of others.

13.    Since January of 2015, Sanford Law Firm has filed and prosecuted over 800 distinct wage lawsuits throughout Arkansas and Texas.  Many of these lawsuits are or were group or collective actions, as well as several class actions under Rule 23.

14.    Collectively, cases filed by the Sanford Law Firm since 2009 have resulted in far more than $13,000,000.00 in settlements and judgments for wage and hour violations for more than three thousand clients across the nation.

15.    I am familiar with the customary and reasonable fees charged by myself and by other attorneys in the Western District of Arkansas. Generally, the customary and reasonable fee charged for federal court work in U.S. District Courts in Arkansas is $150.00 to $350.00 per hour, depending upon experience and specialty.

16.    The rates charged by Sanford Law Firm's attorneys are reasonable. The rates are reflective of the number of years each attorney has practiced, the attorneys' expertise in employment issues such as the FLSA, the contingent nature of an award of fees, and the rates charged by other attorneys specializing in FLSA work. The staff time and hourly rate for the Sanford Law Firm below are likewise reasonable and comparable.

17.    Individual billing in this case is summarized below, and reflects overall reductions made in the exercise of billing discretion:

| Billed By | Actual Time | Actual Charge | Rate | Time Claimed | Amount Claimed | % Reduction |
|---|---|---|---|---|---|---|
| Josh Sanford | 75.55 | $22,665.00 | $300.00 | 33.95 | $10,185.00 | 55.06% |
| Josh West | 1.30 | $292.50 | $225.00 | 0.00 | $0.00 | 100.00% |
| Lydia H. Hamlet | 275.55 | $48,221.25 | $175.00 | 177.30 | $31,027.50 | 35.66% |
| Rebecca Matlock | 3.70 | $462.50 | $125.00 | 0.00 | $0.00 | 100.00% |
| Sean Short | 2.80 | $490.00 | $175.00 | 0.00 | $0.00 | 100.00% |
| Stacy Gibson | 1.10 | $192.50 | $175.00 | 0.00 | $0.00 | 100.00% |

| Staff | 76.50 | $1,912.50 | $25.00 | 49.30 | $1,232.50 | 35.56% |
|---|---|---|---|---|---|---|
| Steve Rauls | 117.30 | $20,527.50 | $175.00 | 83.40 | $14,595.00 | 28.90% |
| Tess Bradford | 0.30 | $52.50 | $175.00 | 0.00 | $0.00 | 100.00% |
| Thomas Odom | 0.40 | $0.00 | $175.00 | 0.00 | $0.00 | 100.00% |
| Vanessa Kinney | 115.50 | $25,987.50 | $225.00 | 76.50 | $17,212.50 | 33.77% |
| Grand Total | 670.00 | $120,873.75 | | 420.45 | $74,252.50 | 37.25% |

18. Each attorney's hourly rates are supported by their skills and experience,

described more thoroughly below:

a. Attorney Steve Rauls graduated from the University of Arkansas at Little Rock, William H. Bowen School of Law with high honors in 2011. As a law student, Mr. Rauls competed in the Wechsler First Amendment Moot Court competition at the American University Washington School of Law and served as a judicial extern in the chambers of Justice Robert Brown of the Arkansas Supreme Court. Mr. Rauls has been published in both the UALR Law Review and in the Journal of the Arkansas Trial Lawyers' Association. Mr. Rauls is an experienced litigator in both state and federal courts, and his practice includes particular emphasis in employment law issues, especially the FLSA. Mr. Rauls has litigated numerous FLSA cases through settlement or trial.

b. Attorney Lydia Hamlet is a 2010 graduate of Mississippi College School of Law. Ms. Hamlet is admitted into practice in the States of Arkansas and Mississippi and is a member of the Arkansas Bar Association, Pope County Bar Association, Mississippi Bar Association and Hinds County Bar Association. Ms. Hamlet has served as lead counsel on numerous bench trials in various Arkansas Circuit Courts and has focused her practice on domestic relations and employment law. Ms. Hamlet also holds a Master of Arts in Psychology.

c. Attorney Vanessa Kinney is a 2007 high honors graduate of the University of Arkansas at Little Rock, William H. Bowen School of Law, graduating eighth in her class. While attending law school, Ms. Kinney was a member of the University of Arkansas at Little Rock Law Review, and had an article published in the Winter of 2006 issue. While attending Law School, Ms. Kinney served in the Law School's Litigation Clinic under special license to practice law under the supervision of a licensed attorney. Since joining Sanford Law Firm, Ms. Kinney has served as both lead attorney and co-counsel on bench and jury trials in both federal and state courts and currently focuses primarily on briefing issues in FLSA cases.

19. The Sanford Law Firm's work focuses on representing workers in

employment matters, and its lawyers focus their practices in the area of the FLSA and similar wage-and-hour cases. In the community of attorneys who focus their practice in this area of the law, the Sanford Law Firm has a strong reputation for its quality of work and diligent representation of its clients.

20.     The lawyers at the Sanford Law Firm often have opportunities for greater responsibility and experience than many of their peers in the legal community with the same years of experience practicing law. What I mean by this is that because of the management style at the Sanford Law Firm, lesser-experienced attorneys are able to independently manage their own cases with the oversight of more experienced attorneys and supported by a firm culture of collaboration and accessibility to all Sanford Law Firm attorneys. Lesser-experienced attorneys with Sanford Law Firm find themselves effectively navigating litigation with far more experienced opposing counsel, as well as successfully taking on far more responsibility than many of their peers of equal experience at other law firms.

21.     Due to this culture of personal responsibility, conferences between attorneys of differing levels of experience ensure that less experienced attorneys receive the benefits of the skills and knowledge of more experienced attorneys.

22.     I am aware of the customary rates for attorneys of various skill levels who focus their practice in the area of labor and employment within the Little Rock area and the hourly rates charged by Sanford Law Firm attorneys are in line with those rates.

23.     I have gained my knowledge of hourly rates charged through my own practice in Little Rock, as well as by practicing with or having conversations with other attorneys who practice in the Little Rock, including Brent Wakefield, John Brown and Paul

Pfeifer.

24.     Sanford Law Firm represented Plaintiffs and opt-in Plaintiffs (hereinafter collectively "Plaintiffs") in this case on a contingency basis and paid all out-of-pocket costs, including filing and service fees, copying costs, and other such expenses without any assurances that fees or costs would be recovered. To be clear, the "contingency" fee arrangement between Plaintiffs and Sanford Law Firm is not a contingency fee in the traditional sense whereby an attorney takes a portion of the plaintiff's recovery. Rather, Sanford Law Firm relies solely on the fee-shifting provisions of the FLSA and AMWA to recover their fees in this case.

25.     Not only is there no guarantee that any fees and costs will be recovered in a contingency fee case, but any recovery made will be delayed as compared to clients who make up-front or monthly payments as litigation proceeds. In contingency fee cases, an attorney is not paid for months or even years, depending on how long it takes for litigation to conclude.

26.     This type of work is time-consuming and rigorous, and the amount of time spent by our firm at each step in this case is reasonable.  It is not uncommon in the course of my practice for clients with similar cases to incur attorney's fees that are as much as or more than those in this case.

27.     With these matters in mind, I reviewed the hourly rates for the attorneys and staff that the Sanford Law Firm is seeking in this case.

28.     Based on my experience and knowledge, it is my opinion that these hourly rates are reasonable given the attorneys' skills, expertise, and reputations, and they are within the range of rates awarded to attorneys with similar backgrounds and experience.

29.     The request for attorney's fees and costs is based upon contemporaneous time and expenses records maintained by Sanford Law Firm as a matter of ordinary and customary business practice. The time and billing records identify the amount of time expended, the tasks performed, the rate of the particular timekeeper involved, and the costs incurred. A true and accurate copy of a spreadsheet reflecting relevant legal services rendered and time expended on this case through the date of this Declaration, is attached to Plaintiff's Motion for Costs and Attorneys' Fees as Exhibit 1 (hereinafter "Billing Spreadsheet").

30.     Each task reflected in the attached Invoice was necessary to the successful resolution of this matter; the hours expended were actually expended on the topics stated; the time spent on each task was reasonable; and the rates claimed are also reasonable.

31.     The entries in the Billing Spreadsheet are reviewed, categorized, and reduced where appropriate to reflect the exercise of billing judgment. Categorization of the tasks is intended to to assist the Court in understanding how time was expended in this case and assessing the charges reasonably incurred by the Sanford Law Firm in this case. The Billing Spreadsheet reflects the actual time, the amount of time after applying any reductions, and the percent of reduction in time.

32.     The time expended in each category of work applied in the Billing Spreadsheet, including actual time, time claimed, and the percent of reduction in time, is summarized below:

| Category | Actual Time | Actual Charge | Time Claimed | Amount Claimed | % Reduction |
|---|---|---|---|---|---|
| Case Management | 56.35 | $8,220.00 | 19.75 | $2,650.00 | 64.95% |
| Client Communication | 39.50 | $6,027.50 | 30.30 | $4,672.50 | 23.29% |

| | | | | | |
|---|---|---|---|---|---|
| Collective Action Certification | 35.00 | $7,495.00 | 26.20 | $5,485.00 | 25.14% |
| Collective Action Management | 5.60 | $1,105.00 | 3.70 | $680.00 | 33.93% |
| Complaint/Summons/Service | 7.10 | $665.00 | 4.60 | $362.50 | 35.21% |
| Court Appearance and Prep | 12.50 | $2,932.50 | 5.50 | $1,320.00 | 56.00% |
| Court Communication | 2.50 | $575.00 | 1.50 | $300.00 | 40.00% |
| Damages Calculations | 18.40 | $2,020.00 | 17.70 | $1,897.50 | 3.80% |
| Decertification Motion | 14.10 | $2,590.00 | 13.70 | $2,507.50 | 2.84% |
| Deposition Related | 60.70 | $10,427.50 | 43.60 | $7,495.00 | 28.17% |
| Discovery Related | 106.50 | $17,255.00 | 86.50 | $13,877.50 | 18.78% |
| Fee Petition | 36.00 | $7,747.50 | 12.20 | $2,752.50 | 66.11% |
| In House Conference | 121.70 | $23,327.50 | 27.80 | $5,452.50 | 77.16% |
| Motion for Sanctions | 14.30 | $2,765.00 | 12.50 | $2,450.00 | 12.59% |
| Opposing Counsel Communication | 32.90 | $6,995.00 | 17.80 | $3,545.00 | 45.90% |
| Settlement Related | 27.75 | $4,878.75 | 27.20 | $4,797.50 | 1.98% |
| Summary Judgment | 79.10 | $15,847.50 | 69.90 | $14,007.50 | 11.63% |
| Grand Total | 670.00 | $120,873.75 | 420.45 | $74,252.50 | 37.25% |

33.     The categories described above were developed by Plaintiffs' counsel to assist this Court in determining the reasonableness of fees. Categorizing individual charges is more of an art than a science, meaning some charges might fit well into more than one category while other charges are difficult to categorize at all, but good faith efforts were made to put each billing entry into the category that best defined it. Some of the categories described above are relatively self-explanatory while others are not, so a description of each category is set forth below.

34.     The category "Complaint/Summons/Service," involves conducting preliminary investigations into the case, drafting the initial Complaint as well as the Summons and other initiating documents, and doing the work involved in getting the case filed and served, including conferences with process servers and staff. The time spent in this category of work is reasonable on its face.

35.     Participating in and conducting discovery is also an important aspect of litigating a case, which is covered by the "Discovery Related" category of billing. Generally speaking, "Discovery Related" includes more formal discovery such as completing initial disclosures, responding to Interrogatories and Requests for Production of Documents served by opposing counsel as well as drafting and serving Interrogatories and Requests for Production of Documents, as well as more informal types of discovery, such as fact investigation, internet searches and reviewing information from Plaintiffs regarding relevant facts of the case. Both formal and informal discovery are important to litigation in all respects, including making decisions about how to proceed in the case, selecting and prepping witnesses, and calculating damages.

36.     In this particular case, Plaintiffs and Defendant conducted written discovery, with each side serving Interrogatories and Requests for Production of Documents on the other and Defendant serving Requests for Admissions on Plaintiffs Defendant took an aggressive stance during discovery, serving Plaintiffs with a proposed sanction motion, including an unreasonable request for sanctions under F.R.C.P. 11 and F.R.C.P. 37, addressing issues such as perceived inconsistencies in facts between the Complaint, discovery responses and depositions, as well as demands for certain text messages from all Plaintiffs. Much of these issues were resolved by way of written correspondence and phone conferences with opposing counsel. The time spent on these tasks is reflected in the "Discovery Related" category of work (with the exception of tasks that fall into their own category of work such as communication with clients and opposing counsel) and is clearly reasonable.

37.     Defendant's threat of a sanctions motion culminated in Defendant's Motion

for Sanctions (ECF No. 52), which included only a small portion of the relief Defendant initially demanded and was without merit as shown in Plaintiffs' Response (ECF No. 54). This work is contained in the "Motion for Sanctions" category and is reasonable on its face.

38.      The "Deposition Related" category involves work that could reasonably have been included in the "Discovery" category of billing, but was separated out because deposition-related work requires a unique set of skills and intensity of work, including preparation of witness topics and outlines and attending depositions. Time spent in this category of work was unnecessarily increased by Defendant's actions. Particularly, Defendant requested to depose all Plaintiffs, requiring Plaintiffs' counsel to expend time preparing all Plaintiffs for depositions, which the parties scheduled over two weeks. Despite these preparations, on the day depositions were set to commence during the second week, counsel for Defendant abruptly cancelled the remaining depositions. Notice of the cancellation was so short that counsel for Plaintiffs were already traveling to the depositions when they received it. During the first week of depositions, two attorneys for Plaintiff attended depositions while three attorneys for Defendant attended depositions. Work related to depositions is captured by the "Deposition Related" category of work except as captured in the "Client Communication" category of work. The planning and cancelling of depositions created the need for significant amounts of communication with Plaintiffs, in addition to attendance at preparation sessions and the depositions themselves. The time spent engaged in these activities is clearly reasonable.

39.      The "Collective Action Certification" category involves the work of obtaining collective action certification pursuant to the FLSA's collective action procedures. This

work included the drafting of Plaintiff's Motion for Conditional Certification (ECF No. 11), reviewing Defendant's response in opposition (ECF No. 14), drafting a Reply in support (ECF No. 18) and preparing an Amended Motion for Conditional Certification (ECF No. 26) as required by this Court (ECF No. 22). Conditional certification was granted (Order, ECF No. 27) and four collective action members then joined this case (Consents to Join, ECF No. 28–31). The time spent on these activities was reasonable.

40.     The "Collective Action Management" category involves post-conditional certification work and class management tasks such as preparing for and distributing notice, receiving Consents to Join, fielding requests for information from putative class members, and otherwise handling the logistics of managing collective actions. The time spent engaged in this work is reasonable.

41.     Among the categories reflected in the spreadsheet, and sometimes encompassed by other categories, are conferences between the attorneys of the Sanford Law Firm, referred to as "In House Conference." These conferences are critical to the success of cases like this one because it improves the efficiency and quality of attorney work. Tasks can be delegated to Sanford Law Firm attorneys who are more experienced in certain types of projects or topics to increase the speed, accuracy or quality for accomplishing the task, or to attorneys whose hourly rates are lower to keep costs down, especially where the speed at which a task can be accomplished will be largely the same regardless of who performs the task. In the case of collective actions, in-house conferences allow attorneys to share the load of multi-plaintiff litigation.

42.     Attorney conferences also increase efficiency because they allow attorneys to share their specific legal knowledge of particular topics, thereby preventing an attorney

who is working on a project from having to spend time doing the research, creating a new legal form, or otherwise "re-inventing the wheel." In this way, even less experienced attorneys are able to work more efficiently and with greater quality than other attorneys of comparable experience. In fact, this "communal" knowledge benefits even more experienced attorneys who may be assisted by a less experienced attorney who simply has a particular skill set or knowledge of a topic that can be quickly shared through communication.

43.    Because of Plaintiff's counsel's knowledge of and experience in FLSA work, as well as their collaboration, Plaintiff's counsel were able to complete tasks efficiently, which served to keep billing lower that it would have been without that knowledge, experience and collaboration.

44.    Attorney-client conferences, reflected in the "Client Communication" category, are also critical to the success of Sanford Law Firm cases. First, all communication from clients is important. In my experience, when a client feels he or she is being ignored by attorneys, that reduces the level of trust between the client and the attorney, which damages the attorney-client relationship. This, in turn, makes quality representation of the client extremely difficult and reduces efficiency. Further, attorneys must trust that their clients are reliable and accessible. Approaching deadlines, settlement conferences, and other issues in a case often demand immediate client response, so a healthy attorney-client relationship is a necessary part of the litigation process.

45.    The "Settlement Related" category involves efforts between counsel for Plaintiff and counsel for Defendant to reach a settlement agreement in this case, including preparing for settlement conference, drafting settlement documents, reviewing settlement

offers, communicating with opposing counsel, and progressing this case toward the settlement that was ultimately reached in this case. The settlement conference in this case was attended by three attorneys for Defendant and two attorneys for Plaintiffs. Ultimately, counsel for Plaintiff obtained a settlement on behalf of Plaintiffs including back wages and liquidated damages. The amount of time spent on this work was reasonable.

46.     The category "Case Management" involves a wide variety of items geared toward progressing a case. This work includes conferences with staff for purposes of providing directions for tasks to be completed by staff members rather than attorneys, scheduling events and other work necessary to the procedural aspects of the case. Case Management also includes work such as reviewing scheduling and other orders as well as reviewing certain filings by opposing counsel that do not fit well into other categories of work. The time spent engaged in this work is reasonable.

47.     The time spent on the category of "Damage Calculations" is likewise reasonable. Calculating damages in a collective action under the FLSA is often a complicated and time-consuming process requiring an understanding and thorough review of the employer's time and pay records, coupled with a strong ability to use and manipulate the features of Microsoft Excel to create varying damages "scenarios" based on the evidence presented in any given case relevant to the applicable limitations period, estimates of hours worked, and other such factors. It is a critical component of FLSA cases and not one that can be left to clerical staff without attorney supervision because of its importance, as well as the variety of relevant factors to be applied and the use of judgment in applying those factors. In this case, the time spent calculating damages was reasonable.

48.     The "Opposing Counsel Communication" category includes communications with Counsel for Defendant in this case, including phone calls, as well as drafting, sending and receiving emails to and from Counsel for Defendant. The time devoted to this category of work is reasonable.

49.     The "Decertification Motion" category reflects time spent addressing and responding to the Motion for Decertification (ECF No. 37) filed by Defendant in this case. The time devoted to this category of work is reasonable.

50.     The "Summary Judgment" category reflects time spent addressing and responding to the Motion for Summary Judgment (ECF No. 33) filed by Defendant in this case. The time spent on this category of work is reasonable case.

51.     The "Court Communication" category of work includes written and telephonic communication with the Court, including staff. The "Court Appearance and Prep" category includes the time spent traveling to and appearing for Court hearings and preparing for the same. The time devoted to these tasks is reasonable in this case.

52.     The "Fee Petition" category of work involves work related to the preparation and drafting of Plaintiffs' Motion for Costs and Attorneys' fees, including drafting the motion, supporting brief, and the current declaration, as well as time spent working with billing, including reviewing, editing, categorizing, and reducing billing, as well as ensuring protection of attorney-client privilege in producing billing.

53.     In the course of motions practice, Plaintiffs conceded dismissal of their FMLA claims, and therefore made efforts to remove billing related to the FMLA claim, including time spent on calculating FMLA damages, a portion of time spent drafting the Complaint in this case, and time spent on acquiring medical releases for Plaintiffs.

54.     In preparing to support Plaintiffs' Motion for Costs and Attorneys' Fees, my firm exercised billing judgment in calculating the lodestar, reviewing records of hours worked and writing off entries for time spent on tasks which could reasonably be viewed as unproductive, excessive, redundant, or which were otherwise deemed as appropriate for writing off completely or reducing as part of Plaintiffs' request for attorneys' fees in this case. Items deducted or reduced also included items for which billing was insufficiently clear to describe how the time was spent, clerical work, a portion of in-house conferences, a portion of time related to case management and other items where appropriate. As a result of this good faith review, the total billing was reduced from $120,873.75 to $74,252.50.

55.     In addition, court costs and recoverable expenses were also incurred in this matter. These costs, totaling $1,578.14, are included in the Costs Invoice attached as Exhibit 3 to Plaintiffs' Motion for Costs and Attorneys' Fees. The costs and expenses detailed in the Invoice that have been advanced by the Sanford Law Firm on behalf of Plaintiffs, and which Plaintiffs are contractually obligated to reimburse Sanford Law Firm out of any recovery in this case.

56.     The amount of the costs requested is correct. The costs stated were necessarily incurred during the case, the services giving rise to the costs were actually and necessarily performed.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on this 3rd day of September, 2020.

*/s/ Josh Sanford*
**JOSH SANFORD**