**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARAKANSAS**
**FAYETTEVILLE DIVISION**

**EVANJELINA RODRIGUEZ and**                                                       **PLAINTIFFS**
**JASON DAVIDSON, Individually and**
**On Behalf of Other Similarly Situated**

**vs.**                                         **No. 5:19-cv-5035**

**GEORGE'S, INC.**                                                                       **DEFENDANT**

**DEFENDANT, GEORGE'S, INC.'S, RESPONSE TO PLAINTIFFS'**
**MOTION FOR COSTS AND ATTORNEY'S FEES**

Comes now, Defendant, George's, Inc. ("George's"), by and through its counsel, the Law Group of Northwest Arkansas LLP ("TLGNWA"), and for its Response to Plaintiffs' Motion for Costs and Attorneys' Fees states:

**I.      Introduction**

The parties settled this typical Fair Labor Standards Act ("FLSA") action on July 28, 2020. Sanford Law Firm ("SLF") is requesting an exorbitant amount of attorney's fees for a straightforward class action case with only two class representatives and four opt-in plaintiffs. SLF has filed a motion with this court requesting attorney's fees of $74,252.50 and costs of $1,578.14. George's believes this to be an extraordinarily unreasonable amount given the case and class size and requests that this court reduce SLF's fees consistent with previous cases in which SLF has exhibited a similar inability to engage in appropriate billing practices. In fact, George's was hard-pressed to find a recently published FLSA case where SLF's attorneys' fees were not reduced.

## II.     Argument

Under the FLSA, a successful plaintiff is entitled to ***reasonable*** attorney's fees in addition to any settlement award. 29 U.S.C.A. § 216(b). However, courts have noted that attorney's fees have become a driving force in many FLSA cases, including cases brought by SLF. *Jones v. RK Enters. of Blytheville*, No. 3:13- CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016).

Generally, a court applies the lodestar method, in which the court considers the number of hours ***reasonably*** expended on the litigation multiplied by a ***reasonable*** hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (emphasis added). The party seeking fees is required to provide evidence of the hours worked and the rate claimed. *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). The district court should then adjust the fee upward or downward on the basis of the information provided. *Id.* A reasonable fee is one that is adequate to attract competent counsel, but that does not create a windfall for the plaintiff's attorneys. *Hendrickson v. Branstad,* 934 F.2d 158, 162 (8th Cir. 1991). As the Court stated in *Jones*, entitlement to attorney's fees cannot be a carte blanche license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction after finding that the plaintiff leveraged a small sum as a stepping stone to a disproportionally large award of attorney's fees. *Jones*, No. 3:13- CV-00252-BRW at *6. This case is precisely that – plaintiffs' counsel is requesting exorbitant fees for a simple straightforward FLSA case with only 6 plaintiffs, including opt-ins. Defense counsel struggles to understand a universe in which this is "reasonable."

Hours that were not "reasonably expended" must be excluded from the award. *Hensley*, 461 U.S. at 434. Counsel has a duty to make a good faith effort to exclude from a request all hours that are "excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

ethically is obligated to exclude such hours from his fee submission." *Vines v. Welspun Pipes*, No. 4:18- CV-00509-BRW, 2020 WL 3062384, at *4 (E.D. Ark. June 9, 2020). Despite the ruling in *Vines,* and several other similar cases, SLF is again seeking excessive, redundant, and otherwise unnecessary fees. As several district court judges have articulated recently, this argument will outline the continual disregard for appropriate billing practices by SLF. Additionally, counsel would like to note that the billing records provided by SLF were difficult to interpret and read and were heavily redacted. Counsel for George's requested a copy of the excel spreadsheet from Mr. Sanford as relied upon in the petition for fees, but was informed that he was unable to send the excel spreadsheet due to the inability to remove confidential information. Therefore, George's counsel has made best efforts to utilize the inadequate information provided by SLF in responding to the present motion. In fact, George's contends that the failure of SLF to produce adequate support for its own petition for attorney's fees should not be taken lightly and highlights the lackadaisical approach to billing practices that SLF continues to employ – further reason for making overall reductions to SLF's fee request, in addition to the specific reductions as outlined below.

### A. Requested Hourly Rates

Generally, a reasonable hourly rate is the prevailing market rate, or the typical rate for similar work in the area where the case is being litigated. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002). SLF has been chastised by several judges in the Eastern and Western Districts of Arkansas over excessive hourly rates.

SLF has requested the following hourly rates, ignoring the judicial scrutiny that their requested rates have garnered in the past several years: $300.00 for Josh Sanford, $225.00 for Vanessa Kinney, $175.00 for Lydia Hamlet, $175.00 for Steve Rauls. Further, SLF is requesting a staff rate

of $25.00 per hour. While the rates for Lydia Hamlet and Steve Rauls have been approved in previous cases, the rates for Josh Sanford and Vanessa Kinney should each be reduced by at least $50.00 an hour and the staff charges should be completely removed from the total. *See Bryan v. Mississippi County Arkansas,* No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) (reduction of Mr. Sanford's rate to $250.00 an hour and Mr. Rauls's rate to $175.00 an hour); *Vines*, 2020 WL 3062384, at *3 (reduction of Mr. Sanford's rate to $250.00 an hour and Ms. Kinney's and Mr. Rauls's rates to $175.00 an hour); *Burton v. Nilkanth Pizza Inc.,* No. 4:19-CV-00307-BRW, 2020 WL 4939470 at *4 (E.D. Ark. Aug. 24, 2020) (reduction of Mr. Sanford's rate to $250.00 an hour, Mr. Rauls's rate to $175.00, and hour and all "staff" charges removed). George's requests that SLF's hourly rates be reduced in accordance with the cited cases; resulting in a maximum hourly rate of $250.00 for Josh Sanford, $175.00 for Vanessa Kinney, $175.00 for Lydia Hamlet, and $175.00 for Steve Rauls.

### B. Staff Time

Consistent with *Burton,* George's further requests that the "staff" charges be removed from the fee calculations. *See Burton*, 2020 WL 4939470 at *4 ("staff work will not be billed to opposing counsel."); *Jones,* 2016 WL 1091094 *4 ("Secretaries' salaries come with the firm's overhead. Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case.") The declaration of Mr. Sanford states that the original time billed by "staff" was 76.5 hours, but that it was reduced to 49.3 hours. It is unclear who the "staff" are comprised of, but without a designation, George's can only assume this refers to secretarial staff. The "staff" time which is not entirely redacted seems to be primarily for the preparation or revising of form pleadings which do not require any legal skill and redundant and intra-office communications. For example, "staff" time accounted for over two hours of time 'working' on the complaint, which was also revised

multiple times by Mr. Sanford, and is in fact a form pleading relied on by SLF for nearly all of their cases. Also, interestingly, "staff" routinely billed to "receive, read and prepare response to email correspondence from opposing counsel" but none of the attorney's at TLGNWA have received email correspondence from any "Staff" at SLF. Accordingly, George's requests all "staff" time to be stricken in accordance with *Burton* and *Jones*.

### C. Hours Expended

Again, consistent with previous Eastern and Western District of Arkansas cases, George's is requesting a reduction in the hours expended by SLF. The declaration of Josh Sanford states that SLF expended a total of 670 hours on this case but is "generously" reducing those hours by 37.25% to 420.45 hours. While SLF is claiming to have reduced billable hours, the hours that they have removed <u>would not have been recoverable</u>. Furthermore, as in previous cases, SLF has inflated its fees by including excessive hours related to double billing, unclear billing, excessive billing, calls with clients, secretarial work, review of filings by co-counsel, and intra-office communications. Accordingly, SLF deserves no applause, as the attempt to audit and reduce their bloated time which included ten timekeepers, does not correct the apparent redundancy, excessiveness, over-staffing, clerical time and otherwise non-billable tasks that SLF has presented as a "reduced" bill. However, George's contends that the attempt at reduction falls far short of the necessary modifications to make the petition a request for reasonable attorney's fees. As they have previously been admonished for multiple times, it is apparent that SLF is continuing to bill the highest timekeeper, Mr. Sanford, for tasks of which are appropriate for a secretary, or at best, a junior attorney. While George's would like the court to take notice of each instance of continued disregard of previous court orders, without a search or sort function, it is impractical to go through SLF's 125 pages of billing records with a fine-tooth comb, and would result in this brief exceeding page limitations.

Accordingly, George's will focus on the most concerning areas of SLF's billing practices based upon the following SLF categories: Client Communications, Opposing Counsel Communications, Settlement Related, Case Management, Fee Petition, and In-House Conference.

*Client Communications*

SLF is requesting $4,672.50 for 30.30 hours expended communicating with clients. However, SLF has redacted all 185 billing entries regarding said communications. In *Vines,* SLF was critiqued for excessive client communications with the 200 plaintiffs "well over 100 – unnecessary – 'telephone conferences between attorney and client re: case update.'" *Vines* 2020 WL 3062384 at *7. Here, there are 185 billing entries categorized as "client communications" that are redacted. In stark contrast to *Vines*, this case involves only six plaintiffs. These excessive charges further strain credulity as the deposed plaintiffs admitted to **never** speaking with Mr. Sanford and only briefly speaking with Mr. Rauls and Ms. Hamlet on the day of the deposition. At the time of Mr. Waldroup's deposition, he testified that he met with counsel one time for 25-30 minutes to prep for his deposition. Waldroup Depo 4:19-24. Mr. Waldroup further testified that before his deposition preparation he never sat down with an attorney at SLF, but did have about three meetings with SLF staff. *Id.* 64:18-65:9. Ms. Rodriguez similarly testified that she met with her attorney for about one hour to prepare for her deposition. Rodriguez Depo 4:15-20. Ms. Rodriguez also testified that she had communications from someone at SLF "about at least every month from now." *Id.* 11:2-5. Mr. Davidson testified that he recalls two visits with his attorneys about his deposition one the day of his deposition and the other on the phone. Davidson Depo 4:19-5:9. Mr. Davidson also testified that he could not recall how regularly he communicated with SLF. *Id.* 15:1-18. Based on the lack of credibility and excessive nature of these charges, these vague and excessive charges should be removed from the fee calculations.

*Opposing Counsel Communication*

SLF is requesting 17.8 hours for communication with TLGNWA, 4.4 hours at a rate of $300/hour and 12.2 hours at a rate of $175/hour. This number has allegedly been reduced from 32.9 hours. However, upon review of TLGNWA billing, telephone, paper correspondence, and email records, even the 17.8 hours cannot be supported. Rather, SLF attorneys exchanged a mere 86 emails over the course of this litigation to George's counsel and had four brief phone conversations that were not related to the motion for sanctions. So, the **maximum** SLF could have reasonably billed for communication with TLGNWA is 12.6 hours, indicating that SLF is overbilling the file by at least 30% - since this is the only portion of SLF's billing that could be specifically confirmed, or rather contradicted, by George's, 30% should be the baseline for further reductions beyond amounts that should be specifically reduced or removed.

*Settlement Related*

SLF has billed 27.2 hours for settlement related tasks at various rates billing a total of $4,797.50. This is an excessive number of hours for what was a straight-forward and informal settlement conference held virtually before a magistrate. For the experience and skills that Mr. Sanford claims warrant SLF deserving of their high hourly rates, this time is excessive and should be reduced. One attorney spending a full day of preparation for the settlement should have been sufficient for a firm that has handled hundreds of FLSA cases. Since it was only Steve Rauls and Lydia Hamlet that participated in the settlement, this one day of preparation should be billed at the $175.00 rate and the settlement conference lasted fewer than seven (7) hours total – the total billed for settlement related tasks should be a **maximum** of 15 hours at $175.00/hour or $2,625.00.

*Case Management*

The category of fees labeled "Case Management" should be excluded from the calculation of attorney's fees. This category is riddled with preparation, drafting, and examination of inter-office memos; telephone calls and conferences with office staff; and examination of documents. SLF has been admonished repeatedly for excessive intra-office communication billing as seen in *Cook v. Beemac Foods, Inc*.

> These types of billing practices are not uncommon for the Sanford Law Firm in FLSA cases. In two recent cases in the Western District of Arkansas, the firm's suggested hours billed were reduced by the Court because of excessive intrafirm communication and overstaffing of cases. . . . Rule 1.3 of the Arkansas Rules of Professional Conduct admonishes attorneys to 'act with reasonable diligence and promptness in representing a client.' These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away from time that could be spent protecting the client's legal interests.

No. 2:18-CV-02155, 2019 WL 2418753 *2 n.2 (W.D. Ark. June 10, 2019) (internal citations omitted). Therefore, the court should remove all case management entries from the fee calculations.

*Fee Petition*

SLF is requesting 12.20 hours, for drafting their fee petition, reduced from 36 hours. In reading SLF's 9 page petition it is clear that they are aware of their inappropriate billing practices and attempting to justify their outrageous conduct to the court. In previous FLSA cases litigated by SLF courts have granted 2 or 3 hours' worth of time for drafting such a petition. *See Burton* 2020 WL 4939470 at *5, *Hill-Smith v. Silver Dollar Cabaret, Inc.,* No. 5:20-CV-5051, 2020 WL 4741917 at *3 (W.D. Ark. Aug. 14, 2020). George's should not bear the burden of paying for SLF to defend their consistently egregious billing practices before the court. Therefore, these entries should be entirely excluded from the fee calculations.

*In House Conference*

SLF is attempting to recover 27.80 hours of "work" categorized as "In House Conference." This category is comprised of 197 (941 before reductions) entries relating to communications between SLF attorneys and staff.

Several of the entries by Josh Sanford are labeled "discussion of case status and directing case." Mr. Sanford has been repeatedly penalized for micromanaging cases. Judge Wilson recently stated, "[o]nce again, SLF includes numerous hours that involve micromanaging associates, who, based on their experience, do not (or should not) need it." *Vines* 2020 WL 3062384 *6.

SLF has also been chastised for overstaffing cases and the excessive intra-office communications that accompany that practice. Again, Judge Wilson has stated "SLF has repeatedly been scolded for overstaffing cases, which results in incessant, intra-office memos and conferences designed to unreasonably increase fees." *Id.* at *4. While SLF has allegedly "reduced" their charges for overstaffing by not billing for the work of 6 of the 10 attorneys working on this case, the results of overstaffing, i.e. the excessive intra-office communications, were not sufficiently reduced. For example, there are many entries such as the one on July 16, 2020 that read "conference with SR re: settlement statement/status." Then again on July 20, 2020, Ms. Hamlet then billed for two separate conferences: "conferences with SR re: settlement offer" and "conference with JS re: settlement offer." These redundant intra-office conferences are excessive and the direct result of SLF's own overhead for overstaffing each case, and therefore should not be included in the fee calculations.

*Motion for Sanctions*

George's should not be responsible any the fees associated with responding to the Motion for Sanctions. George's repeatedly gave SLF opportunities to remedy the issues regarding

spoilation of evidence, which they failed to remedy. Had the matter been decided by Judge Brooks, George's is confident that they would have received a favorable ruling and actually received their own attorney fees for this work.[1] Therefore, George's should not be required to reimburse SLF for any time spent on this issue. Any work undertaken regarding the spoliation of evidence and the resulting motion for sanctions was work created by problems with their plaintiff not retaining relevant evidence. Therefore, the "Motion for Sanctions" category should be excluded from the calculations for fees.

*Discovery Related Billing*

In reviewing the category labeled "Discovery Related," George's is shocked at the number of hours billed in relation to the discovery requests and responses they received. George's received one set of interrogatories and one set of requests for production from SLF that were completely standard. While George's issued interrogatories, requests for admission, and requests for production on each plaintiff, SLF's billing shows that they used "model answers" in drafting their responses and generally relied on boilerplate objections instead of actual responses. The responses by plaintiffs were nearly identical. Further, the discovery responses that George's received contained little information and even refused to give the plaintiffs' names in response to a basic introductory interrogatory. George's is surprised that SLF is requesting 86.50 hours in relation to discovery. Upon examination of the entries, it is clear that there is double billing, vague billing, more intra-office communications and unnecessary review charges included in this category. Further, there are many charges for work related to the motion for sanctions in this section. As

---

[1] As noted in George's motion for sanctions, the standard for spoliation ***after*** a suit has been filed is only whether or not a destruction of the evidence occurred, not if there existed any bad faith associated with the act of destruction. *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 589 (D. Minn. 2005). Ms. Rodriquez noted in her sworn testimony that she deleted text messages following the filing of the lawsuit. Ms. Rodriguez Deposition 90:17 - 91:17.

stated above SLF should not recover any fees related to the motion for sanctions. The excessive charges in the "Discovery Related" category should be excluded from the calculations of fees. A maximum reasonable amount of time for the discovery prepared by SLF would have been approximately 2 hours per plaintiff and 4 hours for review of George's discovery responses. This equals 16 hours at the $175.00 rate or $2,800.00 total.

*Generally Vague, Sloppy and Excessive Billing*

As stated in *Vines* and repeated in several other cases, "no fee-paying client would tolerate [SLF's] practices. What's more troubling is that SLF continues the practice after repeatedly being called out for it." *Vines,* 2020 WL 3062384 at *4; *Hill-Smith,* 2020 WL 4741917 at *2*; *Burton,* 2020 WL 4939470 at *2. SLF has exhibited similar behavior in its billing in this case.

SLF routinely block-bills entries of time resulting in inaccurate and imprecise accounting. For example, on multiple occasions, Mr. Rauls includes multiple tasks in his entries. His April 4, 2019 entry reads "editing and revision of proposed 26F report; email exchange with Lydia Hamlet regarding same." Accordingly, it is unclear how much time was spent on revising the report (already redundant in light of the time spent by other attorneys on the same task) versus internal firm communication (which is firm overhead). In the same vein, Mr. Sanford's entries are vague and include narratives such as "Prepare for hearing" which is vague without presenting any detail to support the time billed and distinguish the time from hearing preparation undertaken by multiple other attorneys at SLF. Block-billing is found across most of the timekeepers' entries, resulting in imprecise time entries which are too numerous to note individually.

For example, Ms. Hamlet used the following vague billing language repeatedly "compose, prepare and send correspondence to X re: X." Often these correspondences were being sent within

the firm and related to case updates. For example, on October 22, 2019, Ms. Hamlet billed "Compose, prepare and send correspondence to AP re: Dinteru correspondence."

SLF also charged for multiple attorneys to review simple court documents. For example, on July 7, 2020 both Josh Sanford and Lydia Hamlet charged for reviewing Ms. Yupangco's entry of appearance. While Mr. Sanford's time was reduced, Ms. Hamlet not only reviewed the entry of appearance but also reviewed an intra-office memo regarding the entry of appearance. This excessive billing for reviewing simple and standard documents is found throughout SLF's requested fees.

There is also an abundance of charges simply titled "examination of X." For example, Josh Sanford billed for "examination of Defendant's counsel website" on March 19, 2020. TLGNWA is puzzled as to how their website is relevant to this litigation and why the highest charging attorney would be billing for such research. On that note, Josh Sanford seems to be the billing attorney that SLF has decided to leave on the bill for most "examination" charges, allowing SLF to charge at the highest rate for examination of simple pleadings such as entries of appearance and motions when Ms. Hamlet is clearly the attorney doing the lion's share of the work. With her hourly rate being half of Mr. Sanford's, it seems that SLF is intentionally charging the highest rate possible for simple tasks.

Again, as stated above, no fee-paying client would tolerate SLF's billing practices. Likewise, this court should not tolerate SLF's vague, sloppy, and excessive billing and the remaining billing not reduced by a specific number above, should be generally reduced by the most defensible percentage available – 30%.

*Requested Reductions*

TLGNWA has made best efforts to analyze the billing spreadsheet provided by SLF and calculate a reasonable reduction of hours based on the information provided. TLGNWA was able to compare the category of "Opposing Counsel Communication" with their own records. The result was shocking. SLF had charged 30% more for applicable charges that should have been essentially identical. This greatly concerns TLGNWA about the accuracy of the billing in other categories based on the discrepancies outlined above and the audit TLGNWA was able to do utilizing their own billing. Therefore, TLGNWA requests the following reductions in billable hours:

| | |
|---|---:|
| Reduction of "reduced" charges | $5,615.00 |
| Reduction of "In House Conference" charges | $5,452.50 |
| Reduction of "Client Communication" charges | $4,672.50 |
| Reduction of "Case Management" charges | $2,650.00 |
| Reduction of "Fee petition" charges to 2 hours at $175/hr rate | $2,402.50 |
| Reduction of "Discovery Related" charges | $11,077.50 |
| Reduction of "Settlement Related" charges | $2,172.50 |
| Reduction of remaining charges consistent with attorney rate reduction (excluding reduced categories) | $4,217.40 |
| Reduction of remaining charges consistent with "Opposing Counsel Communication" discrepancy of 30% and to reflect negligent billing practices | $10,850.28 |
| **Total Reduction** | **$49,110.18** |

TLGNWA believes that a reduction of at least $49,110.18 is the ***minimum*** amount that should be reduced in this case. Therefore, the maximum that SLF could possibly receive is $25,142.32, which George's contends would likely be much less if it was given access to all of

SLF's records in a manner that could be searched or sorted. However, when looking at the totality of the circumstances – the fact that no novel issues existed in this case, the fact that there were only 6 plaintiffs, and the fact that SLF's billing records simply cannot be trusted – awarding SLF even this minimum amount still seems absurd and far from reasonable. Therefore, TLGNWA believes that the maximum *reasonable* amount SLF should recover so as not to run afoul of *Jones* should not exceed $15,000.00.

### III.　Costs

George's has one objection to the calculation of costs. The three depositions that took place in this case occurred on December 2, 3, and 4, 2019. However, the spreadsheet provided shows hotel costs for travel to depositions on November 26, 2019 and December 6, 2019 and does not provide any supporting documentation such as receipts. George's objects to these entries as they do not correspond to the dates of the deposition and are not supported by any documentation. Therefore, costs should actually be $565.00.

### IV.　Conclusion

George's objects to Plaintiff's requests for attorneys' fees and costs on the grounds articulated above. Namely, George's objects to Sanford Law Firm's inappropriate billing practices that are purposefully aimed at securing the highest amount of fees possible, regardless of the work undertaken. George's further objects to the unclear costs requests that were provided. George's requests that this court strike the unsupported and excessive billing charges and costs and reduce the fees accordingly granting no more than $15,000.00 in fees and $565.00 in costs.

        Respectfully submitted,

        **George's, Inc.**

/s/ Kristy E. Boehler
Kristy E. Boehler (AB #2011190)
K.C. Tucker (AB #2007288)
Gary V. Weeks (AB #1988013)
The Law Group of Northwest Arkansas LLP
1830 Shelby Lane
Fayetteville, AR 72704
Phone: 479-316-3760, Fax: 844-325-660
Kristy.Boehler@lawgroupnwa.com
KC.Tucker@lawgroupnwa.com
Gary.Weeks@lawgroupnwa.com

## CERTIFICATE OF SERVICE

        This is to certify that I have on this day served all opposing parties and known counsel listed below in the above and foregoing matter with a true and correct copy of this pleading via the Court's electronic filing system.

This 16th day of September, 2020

Lydia H. Hamlet (AB #2011170)
Josh Sanford (AB #2001037)
Sanford Law Firm, PLLC
One Financial Center
650 Shackleford, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

        /s/ Kristy E. Boehler
        Kristy E. Boehler